(Reap. Dec. 8276)

FRANK P. DOW CO., INC. *v.* UNITED STATES

Entry No. 2454.

(Decided January 7, 1954)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Chauncey E. Wilowski* and *Samuel D. Spector*, special attorneys), for the defendant.

RAO, Judge: Plaintiff herein imported 1,000 tennis racket frames from Australia for the account of Pacific Coast Racket Distributing Co. of Los Angeles. The importation consisted of five different styles of frames, there being 200 of each variety. This merchandise was entered at the port of Los Angeles, Calif. at the invoice prices, plus

10 per centum, plus cases and packing. The details of the entered and appraised values are as follows:

| Invoice description | Entered value (Australian currency) | Appraised value (Australian currency) |
| --- | --- | --- |
| Finalist | 32/3 | 40/0 |
| Regent | 27/9 | 35/3 |
| Minerva | 22/3 | 29/3 |
| Challenge | 20/6 | 26/3 |
| Finalist Junior | 17/6 | 21/9 |
| | Plus 10 per centum tax | Plus 10 per centum |
| | Plus cases and packing | Plus cost of cases and packing |

In the resulting appeal for reappraisement, which is the instant proceeding, it was conceded that the appraisement was made upon the basis of foreign value. Foreign value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, as:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

It is the claim of the plaintiff that the proper basis for the ascertainment of the statutory value of the instant merchandise is cost of production. The formula for arriving at a value based upon cost of production is provided for in subdivision (f) of said section 402 as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production

who are engaged in the production or manufacture of merchandise of the same class or kind.

At the trial, there was received in evidence, as plaintiff's exhibit 1, an affidavit of J. G. O'Shannessy, who for 10 years was the managing director of Hedley's Sporting Goods Pty., Ltd., hereinafter called Hedley's, the Australian manufacturer and exporter of the instant merchandise. The affiant, after setting forth his familiarity with the conditions under which Hedley's racket frames such as are here involved are sold, both for export to the United States and for home consumption in Australia, stated that sales for export to the United States are made exclusively to the Pacific Coast Racket Distributing Co. of Los Angeles, Hedley's United States agent. For home consumption, except in the state of Victoria, sales are made to agents of the firm, or factory representatives, one in each state, who buy and sell Hedley's racket frames exclusively. They are permitted to sell only to wholesalers and large and small retailers, and are required to charge prices fixed by the manufacturer for each category of purchaser. The prices do not vary by reason of differences in wholesale quantities. Each agent or representative receives a 10 per centum deduction from Hedley's so-called factory prices.

In the state of Victoria, sales are made by Hedley's itself, and Hedley's tennis racket frames are therein freely offered for sale and sold to wholesalers, and both large and small retailers, but not to the public.

It further appears from plaintiff's exhibit 1 that other Australian firms manufacture and sell similar merchandise under substantially the same sales policies as are maintained by Hedley's. They have agents in each state of Australia and require such agents to limit their sales in the same manner as does Hedley's.

Plaintiff's exhibit 1 concludes with the following statement:

I am familiar with the costs of production of Hedley's racket frames. Such costs are as stated in this table, the letters A to G representing the styles in the order in which they appear above. As Hedleys work on a system of average costs the racket frames are shown in two groups only.

|  | | (A B C) | (D E F G) |
|---|---|---|---|
| 1) | Cost of materials and of fabrication) | 21/– | 13/– |
| 2) | Usual general expenses) | 4/6 | 4/6 |
| 3) | Cost of containers and coverings) | 3d. | 3d. |
| 4) | An addition for profit) | 2/9 | 2/– |

In a supplementary affidavit, received in evidence as plaintiff's exhibit 2, the said O'Shannessy averred that he was unable to obtain any information from other Australian manufacturers of merchandise of the same class or kind as is here involved, for the reason that such information is regarded as confidential, and he has no access to it.

Clifford Robbins, the owner of Pacific Coast Racket Distributing Co. of Los Angeles, testified for plaintiff that his company has been in the business of importing tennis racket frames since 1932 or 1933; that such importations ceased in 1941, when the war started, but were resumed again in November 1947, the instant merchandise being the first postwar importation. Prior to the 1947 shipment, he had no previously imported stock on hand, and made no sales of such tennis racket frames until the instant shipment cleared customs. This witness further stated that in November and December 1947, his company was Hedley's exclusive representative in the United States, and bought and sold Hedley's tennis racket frames on its own behalf. He produced a sample frame, plaintiff's exhibit 3, and pointed out thereon a decalcomania marking to the effect that Pacific Coast Racket Distributing Co. is Hedley's sole United States distributor. This statement appears on each of the rackets imported by his firm.

On behalf of the defendant, there is in evidence, as collective exhibit A, a communication from Hedley's to Pacific Coast Racket Distributing Co., to which is attached a set of answers to a letter from the United States Customs Service, and a copy of Hedley's price list. The answers relate substantially the same facts which are contained in plaintiff's exhibit 1, supplementing them, insofar as here relevant, to the extent of showing that approximately 60 per centum of Hedley's total sales are made to agents.

This is the evidence upon which plaintiff relies to support its contention that the instant merchandise should be appraised upon the basis of cost of production. I do not find it sufficient for that purpose.

By statute, the value found by the appraiser is presumed to be the value of imported merchandise, and the burden is cast upon the party who challenges its correctness to prove otherwise. (28 U. S. C. § 2633.) This burden has been construed to be a twofold one. The challenging party is required to prove, not only that the value found by the appraiser is erroneous, but, as well, what the value properly is, within the formulas provided by the valuation statute, section 402 of the Tariff Act of 1930. *G. P. Snow* v. *United States*, 24 C. C. P. A. (Customs) 319, T. D. 48767; *Garbey* v. *United States*, 24 C. C. P. A. (Customs) 48, T. D. 48332; *G. & H. Transport Co., Inc.* v. *United States*, 27 C. C. P. A. (Customs) 159, C. A. D. 78; *Sears, Roebuck & Co.* v. *United States*, 31 C. C. P. A. (Customs) 36, C. A. D. 246.

Moreover, before a party may invoke a value predicated upon cost of production, the evidence must establish that there is no foreign, export, or United States value for such or similar merchandise. (Section 402 (a) of said Tariff Act of 1930.) It is then incumbent upon a challenging party to prove each of the elements set forth in the cost of production provision, *supra*.

An examination of the record before me, in the light of the foregoing precepts, reveals that as to *such* merchandise, plaintiff has successfully negatived the existence of foreign, export, and United States values. It has been shown that in the country of exportation such merchandise was not freely offered for sale to all purchasers. The restrictions which the manufacturer imposed upon its agents, in areas of Australia, other than the state of Victoria, clearly indicate that the market was a controlled one, and that there was no foreign value for such merchandise. *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158; *United States* v. *Heemsoth-Kerner Corp. (Bauer Type Foundry, Inc.)*, 31 C. C. P. A. (Customs) 75, C. A. D. 252.

Likewise, the proven fact that the Pacific Coast Racket Distributing Co. was the exclusive United States agent for the sale and distribution of Hedley's tennis racket frames, buying and selling on its own behalf, eliminates consideration of any export value for such merchandise. *United States* v. *Malhame & Co.*, 24 C. C. P. A. (Customs) 448, T. D. 48911.

United States value for such merchandise has been negatived by the uncontradicted evidence that, at or about the time the instant merchandise was exported, there were no previously imported tennis racket frames of a like kind being sold in the principal market of the United States. *United States* v. *G. W. Sheldon & Co. (Renaud & Co.)*, 23 C. C. P. A. (Customs) 245, T. D. 48108.

With respect to similar merchandise, the evidence adduced in this case is by no means so clear or so certain of legal implications. That similar merchandise was, in fact, produced in the country of exportation is established by plaintiff's own proof. The familiarity of plaintiff's witness O'Shannessy with the tennis racket trade in Australia would seem to equip him with knowledge of the distributional procedures of his competitors sufficiently to make him competent to testify as to the policies adopted by them in the sale of their merchandise. Accordingly, the statement that each of Hedley's competitors has an agent in each state in Australia whose sales are limited by his respective principal establishes that the foreign market for similar merchandise, as in the case of such merchandise, was a controlled one, and that there was, in fact, no foreign value for the involved articles.

However, it is not at all apparent from the evidence that other manufacturers imposed similar restrictions upon their export sales, or that, as in the case of Hedley's, each had an exclusive United States agent. The fact that they have agents in "each state of Australia" provides no ready inference for the conclusion that the system of maintaining exclusive agencies also obtained in the United States. Although there is no clear indication that other manufacturers of similar

tennis racket frames offered their wares for exportation to the United States, neither does the record show that this was not the practice. Certainly, there can be no presumption that manufacturers of similar merchandise did not export the same, and evidence with respect to the terms and conditions under which export sales were made by them is, therefore, essential. *United States* v. *International Forwarding Co., Inc., a/c Ozalid Corporation*, 27 C. C. P. A. (Customs) 21, C. A. D. 56.

It may be asserted that O'Shannessy's statement in plaintiff's exhibit 1 "that these other companies maintain the same policy as Hedley's with respect to their offers and sales, and operate under similar arrangements," applies as well to sales for exportation as to sales for home consumption in Australia. I am, however, inclined to the view that the qualifying words immediately following, to wit, "in other words, they also have agents in each state of Australia and require them to limit their sales in the same manner as Hedley does," operate to confine the scope of the original statement to domestic transactions only. This construction of the evidence leaves the record barren of proof with respect to the existence or nonexistence of export value for similar merchandise, an omission fatal to plaintiff's reliance upon cost of production as a basis for determining the value of the importation at bar.

Assuming arguendo, however, that the phrase above quoted consists of words of explanation rather than limitation, there would then be, as in the case of such merchandise, and for the same reason, no export value for similar merchandise. In that event, attention would be directed to ascertaining whether the record explains away United States value for similar tennis racket frames. As to such value, there is no evidence whatsoever before me. I am not able to determine from the instant record whether tennis racket frames from other Australian manufacturers were being offered for sale in United States markets at the time of exportation of those at bar. Accordingly, I am constrained to hold that plaintiff has not proven its case in the manner required by the statute, and evidence as to cost of production may not be considered in this proceeding.

Although it has been shown herein that the appraiser's finding of value was predicated upon an erroneous basis, no different value has been established by this record. I have no recourse, therefore, but to hold that the evidence is insufficient to upset the values returned by the appraiser.

I, therefore, make the following findings:

1. The merchandise herein consists of five styles of tennis racket frames exported from Australia. It was entered at the invoice unit prices, plus 10 per centum tax, plus cases and packing.

2. The merchandise was appraised on the basis of foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, the unit values in the case of each style being in excess of the entered values, with 10 per centum, plus the cost of cases and packing being added.

3. That both the manufacturer of the instant merchandise and the manufacturers of similar articles placed restrictions upon their sales in the home market, both with respect to prospective purchasers and with respect to prices for resale.

4. That sales for export to the United States of such merchandise were restricted in that the manufacturer and exporter maintained an exclusive sales arrangement with the Pacific Coast Racket Distributing Co., which purchased and sold such merchandise on its own behalf.

5. That the evidence does not clearly establish whether the restrictions, as outlined in finding of fact number 3, pertaining to manufacturers of similar merchandise, also applied to sales for exportation to the United States.

6. That there was no previously imported merchandise of the identical kinds as those involved in this case offered for sale in the principal market of the United States at or about the time of exportation of the instant shipment.

7. That there is no evidence whatsoever upon the subject of United States value of similar merchandise.

I, therefore, conclude, as matter of law:

1. That there is no foreign value for such or similar merchandise.

2. That there is no export value for such merchandise.

3. That there is no United States value for such merchandise.

4. That the evidence is insufficient to negative the existence of export or United States value of similar merchandise.

5. That plaintiff has failed to sustain its burden of proof.

6. That the value of each style of the imported merchandise is as returned by the appraiser.

Judgment will be entered accordingly.