(Reap. Dec. 8294)

CHAS. E. WASHBURN COMPANY *v*. UNITED STATES

Entry No. 4104, etc.

(Decided February 25, 1954)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Charles J. Wagner, Joseph E. Weil*, and *Chauncey E. Wilowski*, trial attorneys), for the defendant.

JOHNSON, Judge: These reappraisement appeals involve the proper value applicable to certain Fenix and Peerless phonograph records imported from Mexico City, Mexico, from March to May 1946. The records were invoiced at U. S. $0.45 each. The Fenix records were entered at the same price. The packing was added, but the cost of envelopes was included. The Peerless records in reappraisement 163053–A were entered at the same price, plus packing and plus the cost of the envelopes, although such envelopes were included in the entered price of the remaining reappraisements. All of the records were appraised at the foreign value of Mexican pesos 2.50 per record, cost of envelopes, Mexican pesos 0.03 included, plus packing.

The importer testified at the trial that he had been in the record business for 20 years; that he made several trips to Mexico each year for the purpose of purchasing records; and that he had purchased the records in question from the distributor, Eduardo Baptista & Co.

An affidavit of Gustavo Klinckwort, president of Peerless de Mexico, S. A., formerly known as Eduardo Baptista y Cía., was admitted in evidence as plaintiff's exhibit 1, wherein it was disclosed that Mexico City was the principal market in Mexico for such merchandise for home consumption and for export; that Peerless phonograph records were freely offered for sale and sold during the months of March, April, and May 1946 for export to the United States to all purchasers, in the usual wholesale quantities and in the ordinary course of trade, at 45 cents United States currency each; and that such price was the same for any wholesale quantity, including the cost of the envelope and cardboard container holding 25 records, cost of outside containers extra. As for the home market value, the affiant stated that such records were offered only to their clients who were wholesale dealers of Peerless and Fenix records and not extended to other purchasers. As to similar records, the affiant stated that the only similar records were manufactured and sold by RCA Victor Mexicana, S. A., of Mexico City; that such records were freely offered for sale and sold for home consumption in Mexico, in the usual wholesale quantities and in the ordinary course of trade, at Mexican pesos 1.90 each; and that such records were not offered for sale for export to the United States.

Attached to the affidavit, but not a part thereof, although admitted in evidence as a part of exhibit 1, is a notice to the exporter's wholesale clients, dated February 15, 1946, listing prices of 25 records and up of Mexican pesos 2.50 each, and Mexican pesos 2.20 each. The Mexican pesos 2.20 price, however, was a special offer of a reduced price made as an inducement to purchasers of records to sell to the record company certain scrap records at a fixed price.

On behalf of the defendant, three Government reports were admitted in evidence. Exhibit A is a report of a Treasury representative, dated April 18, 1945, approximately a year prior to the dates of shipment of the records involved herein. The report disclosed that the manufacturer of the records, the Fabrica de Discos Peerless, sells its entire output to Eduardo Baptista y Cía., who also sells the Fenix records upon the same terms and conditions as the Peerless records.

The Treasury representative interviewed Gustavo Klinckwort, the affiant, exhibit 1, as to the foreign and export values of records, and examined the books of the company. The export price at the time of the report was U. S. $0.62 per record, and, if scrap records were returned with the order, the price was U. S. $0.45 per record. The principal market for records in Mexico was reported as Mexico City,

the usual wholesale quantities were reported as 100 records or more, and the price was not affected by the quantity purchased.

As for sales in the home market, the Treasury representative stated that Mr. Klinckwort advised him that the same merchandise was freely offered and sold to all purchasers for home consumption, without restriction as to resale or use, at approximately the same price. An examination of the company books by the Treasury representative disclosed to him that all sales for home consumption were made at either 3, 2.30, or 2.20 pesos per record. Those who did not turn in any scrap records paid 3 pesos for more than 25 records.

Defendant's exhibit B consists of a report of the same Treasury representative, dated April 11, 1946. The report disclosed that there was no price list published but that notices of price changes were circularized from time to time; that two copies of the latest circular announced a reduction in price of the "Peerless" and "Fenix" records from U. S. $0.62 to U. S. $0.45 each, effective January 1, 1946; and that the records are freely offered for sale and sold to all purchasers in the home market for Mexican pesos 2.20 pesos each.

Defendant's exhibit C consists of a C. I. E. leaflet, which is a copy of the same Treasury representative's report, dated August 2, 1946, with reference to the foreign and export values of the records in question. The Treasury representative stated that when Eduardo Baptista of the firm of Eduardo Baptista y Cía., S. de R. L., visited his office and furnished the information, contained in exhibit B, he failed to disclose that he had issued a circular letter under date of February 15, 1946, notifying his customers in the home market of price changes, effective February 15, 1946. According to the circular mentioned, records in quantities of 25 or more, without the exchange of scrap, were sold for 2.50 pesos each, and, with the exchange of scrap, for 2.20 pesos each.

. The Treasury representative reported that from a check of the seller's home consumption sales the greatest number of sales consisted of 25 or more records, and the home consumption price of such quantities of records from February 15, 1946, was Mexican pesos 2.50, packing extra, cost of the paper envelopes included.

The appraisement made by the appraiser on the basis of the foreign value was apparently made in conformity with this last report of the Treasury representative. It will be noted that this report is the same as the scale of prices attached to plaintiff's exhibit 1.

Counsel for the plaintiff contends that the sworn statement of the exporter is of much more evidentiary weight than those of questionable authority made by the Treasury representative.

Counsel for the Government, on the other hand, contends that the plaintiff has failed to overcome the presumption of correctness of the appraised values, and, further, that the evidence submitted by the

Government affirmatively sustains the appraised values of the merchandise.

From a careful examination of the record, I am of the opinion that the reports made by the Treasury representative of his investigations into the foreign and export markets of Mexican records are quite contradictory of the affidavit as to the controlled market in Mexico of records sold for home consumption, and that the plaintiff made no attempt to offer additional evidence in rebuttal as to the existence or nonexistence of a foreign value. As to the price for home consumption of Mexican pesos 2.50 per record, there seems to be no question for the reason that both the affiant and the Treasury representative reported that such was the value for records, when sold in quantities over 25 pieces.

For the reasons stated, I find as facts:

1. That the merchandise consists of phonograph records exported from Mexico City, Mexico.

2. That the principal market for such phonograph records was Mexico City for the sale of such or similar records for home consumption as well as for exportation to the United States.

3. That, on the dates of exportation of the phonograph records in question, the price at which such or similar records were freely offered for sale and sold in the principal market of Mexico in the ordinary course of trade for home consumption is the appraised value.

4. That the foreign value of the phonograph records in question is higher than the export value.

I conclude as a matter of law that:

The proper foreign value of the involved merchandise is the value as returned by the appraiser.

Judgment will be entered accordingly.