(A. R. D. 55)

CHAS. E. WASHBURN COMPANY v. UNITED STATES

Entry No. 4104, etc.

First Division, Appellate Term

(Decided January 28, 1955)

*Lawrence & Tuttle* (*Frank L. Lawrence* of counsel) for the appellant.

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: This case comes before us as a review of the decision in *Chas. E. Washburn Company* v. *United States*, 32 Cust. Ct. 596, Reap. Dec. 8294, wherein the trial judge sustained the appraised values of certain Fenix and Peerless phonograph records, exported during the period March to May 1946 from Mexico City, Mexico, and entered at the port of El Paso, Tex.

All of the phonograph records in question, except the Peerless records covered by reappraisement 163053–A, were entered at the invoice price of U. S. $0.45 each, cost of envelopes included, plus packing. The Peerless records covered by reappraisement 163053–A were entered at the same unit price, plus the cost of envelopes, plus packing. Appraisement was made on the basis of foreign value (section 402 (c) of the Tariff Act of 1930, as modified) at Mexican pesos 2.50 per record, cost of envelopes, Mexican pesos 0.03, included, plus packing.

Appellant (plaintiff below) contends that the proper basis for appraisement of the present merchandise is export value (section 402 (d) of the Tariff Act of 1930) and that such statutory value is U. S. $0.45 per record, with the cost of the envelope included in the unit price, and the cost of exterior packing extra. In alleging that foreign value, as found by the appraiser, is not a proper basis for appraisement of the phonograph records under consideration, appellant contends that, at the time of exportation of the present merchandise, records, such as those under consideration, were sold or offered for sale to wholesalers only, and, therefore, the foreign market for such merchandise was a controlled market, as contemplated by the statute. Appellant contends further that the foreign value of similar merchandise cannot be applied because such value was lower than the export value of the records in question.

To support its contentions, appellant introduced, at the trial below, oral testimony and documentary evidence. The oral testimony was offered by the owner of the importing company, who has been engaged in the sale of phonograph records and coin-operated phono-

graphs for the past 20 years. He merely stated that he purchased the phonograph records in question from Eduardo Baptista & Co., who was the distributor for the manufacturer, Fabrica de Discos Peerless of Mexico City, Mexico.

Appellant also introduced in evidence an affidavit (plaintiff's exhibit 1), executed by Gustavo Klinckwort, who states that he is "the president of Peerless de Mexico, S. A. of Mexico, D. F. (sole factory outlet of Fabrica de Discos Peerless), formerly known as Eduardo Baptista y Cia., of Mexico, D. F." The witness testified that, at the time of exportation of the phonograph records in question, he was general manager of Eduardo Baptista & Co., and that he was familiar with the sales made by that company, including the transactions covering the shipments in question. His testimony concerning statutory foreign value of merchandise, such as that under consideration, is as follows:

During the same period [March, April, and May 1946] these Peerless phonograph records were offered for sale for home consumption in Mexico to our clients who are wholesale dealers of Peerless and Fenix records. In the ordinary course of trade this offer was limited to such dealers and was not extended to all purchasers. This offer was made by means of a circular dated February 15, 1946, a copy of which with its translation is attached to this affidavit.

Attached to the affidavit, as part of plaintiff's exhibit 1, are "three pages" (so described by counsel for appellant), which were not a part of the affidavit "when it was originally executed," but "were later affixed to the document." Two of the "three pages" consist of copies of the "circular dated February 15, 1946," referred to in the affidavit (said exhibit 1). One of the copies appears in the Spanish language on the business stationery of the Mexican distributor, Eduardo Baptista y Cia.; the other is an English translation, typewritten on the business stationery of the foreign manufacturer, Fabrica de Discos Peerless, S. A. The third "page" is a circular, dated January 1, 1946, written in the English language on the business stationery of the Mexican distributor and addressed "To our foreign Wholesalers," who, obviously, included American importers.

Counsel for appellant confines his argument to the circular, dated February 15, 1946, and points to the letterhead of the foreign distributor, that carries the legend in Spanish, "Distribuidores para mayoristas unicamente," the English translation thereof being "Distributors to wholesalers only." If, as appellant contends, the Spanish legend on the distributor's stationery is to be taken as conclusive of the class of purchasers to whom these phonograph records are sold, or offered for sale, then, the interpretation urged by appellant as to the circular, dated February 15, 1946, directed to the foreign market for home consumption, might also apply to the circular, dated January 1, 1946, on the same kind of stationery, and which relates to the

foreign market for export to the United States, as it is directed exclusively to "foreign Wholesalers." If both of the circulars referred to are to be construed in the same light, and accepted as relating to an individual or a particular class of purchasers, i. e., wholesalers, to the exclusion of all other categories, the effect would be an elimination of both foreign value and export value as a proper basis for appraisement. On the other hand, it may well be, as suggested in Government counsel's brief, that "dealers were their [the distributors'] only customers, and sales to them represented the ordinary course of trade," a condition that might be inferred from the practice, as disclosed by the circular of February 15, 1946, of offering specially reduced prices with the return of "record scrap." In this connection, the said circular states that "you will have the right to purchase new records at the special prices noted below in the proportion of five records for each kilo of scrap shipped to and accepted by us. This privilege applies only to the Peerless and Fenix labels."

Three reports of a Treasury representative (defendant's exhibits A, B, and C), introduced by the Government at the trial below, tend to clarify the evidence offered by the importer. Each of those reports includes a positive statement to the effect that phonograph records, such as those under consideration, were freely offered for sale to all purchasers in the foreign market for home consumption. The latest of them (defendant's exhibit C), under date of August 2, 1946, refers to records of sales and to schedules of prices of the Mexican distributor, which schedules, showing prices for merchandise sold in the principal market of Mexico City for home consumption, include the price adopted by the appraiser as the statutory foreign value of the merchandise in question.

It should be emphasized at this point that the importing company, as the appealing party in these appeals for reappraisement, assumed the burden of meeting every material issue involved in the case, of overcoming the statutory presumption of correctness that attaches to the appraiser's valuation, and of proving the correct value of the merchandise. The responsibility of a plaintiff in reappraisement proceedings was set forth in *United States* v. *T. D. Downing Co.*, 20 C. C. P. A. (Customs) 251, T. D. 46057, as follows:

We have had frequent occasion to endeavor to point out just what is required and upon whom the duty of proof primarily rests in appeals to reappraisement. In *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 165, T. D. 45276, we discussed a number of questions relating to reappraisement procedure at considerable length and cited numerous cases in support of the rules there stated. We shall not here restate the principles of law and practice there outlined.

It is sufficient here to bear in mind that the importer having appealed, it was incumbent upon it to show (1) the foreign value and (2) the export value, to the end that the higher might be taken as the dutiable value, or to show (1) a foreign value and the nonexistence of an export value, or (2) an export value and the

nonexistence of a foreign value. Being the appealing party, it was incumbent upon it "to meet every material issue involved in the case." *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, 42, T. D. 43324.

On the basis of the record before us, as hereinabove outlined, appellant has failed to meet its burden, as set forth in the foregoing quotation.

The existence of "such," or identical, merchandise in the foreign market, as we find herein, removes from discussion any consideration of "similar" merchandise, for, as held in *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714, the words "such" and "similar," as they appear in the definition of statutory foreign value, are not used synonymously, but alternatively.

For all of the reasons hereinabove set forth, we find as facts:

(1) That the merchandise in question consists of phonograph records exported from Mexico City, Mexico, and entered at the port· of El Paso, Tex.

(2) That, at the time of exportation of the phonograph records in question, such merchandise was freely offered for sale and sold to all purchasers in the principal market of Mexico City, Mexico, in the ordinary course of trade for home consumption, at Mexican pesos 2.50 per record, cost of envelopes, Mexican pesos 0.03 included, plus packing, as appraised.

(3) That the prices at which phonograph records, such as those in question, were sold or offered for sale in the foreign market for home consumption, at the time of exportation of the present merchandise, were higher than the prices for the same merchandise when sold or offered for sale for export to the United States.

Accordingly, we hold as matter of law:

That the proper basis for appraisement of the phonograph records in question is foreign value, as defined in section 402 (c), as modified, and that such statutory value is the appraised value.

The judgment of the trial court is affirmed.

Judgment will be rendered accordingly.