(Reap. Dec. 8484)

JOSEPH G. MADDOX, AS TRUSTEE OF AND FORMER DIRECTOR OF AMERICAN EQUIPMENT COMPANY, INC., DISSOLVED *v.* UNITED STATES

Entry No. A–24, etc.

(Decided October 7, 1955)

*Joseph G. Maddox* for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Dorothy C. Bennett* and *Daniel I. Auster*, trial attorneys), for the defendant.

JOHNSON, Judge:   This appeal for reappraisement involves 10 entries of cameras and parts, exported from Czechoslovakia between November 1950 and September 1951, and imported by or for the account of American Equipment Company, Inc., of Atlanta, Ga.   One appeal covering the 10 entries was filed in the name of "American Eq. Co. Inc. Deceased, by Joe G. Maddox."   Thereafter, an appeal, covering warehouse entry No. A–24, and amended appeals, covering the

other entries, were filed in the name of "Joseph G. Maddox, as Trustee of and former director of American Equipment Company, Inc., Dissolved."

At the trial, counsel for the Government stated that the amended appeals were, in substance, motions to amend the original appeal to substitute as party plaintiff "Joseph G. Maddox, as Trustee of and former director of American Equipment Company, Inc., Dissolved." In support of the motions, there were received in evidence certain documents showing that the corporation was dissolved on April 6, 1953, and that Joseph G. Maddox was appointed as trustee to wind up its affairs. Accordingly, the motion to substitute the trustee as party plaintiff is granted.

The merchandise involved herein consists of Flexaret III reflex cameras, without leather carrying satchels, and parts, and Microma cameras, with cases, and parts. They were entered either at the invoice unit values or at slightly increased prices. They were appraised at higher values. An itemized statement of the invoiced, entered, and appraised values of the merchandise is set forth in schedule A, attached hereto and made a part hereof.

Plaintiff called three witnesses: Percy H. Perkins, Jr., a stockholder and officer of the American Equipment Company, Inc.; Vladimir J. Wolf, presently sales manager for the Bolex Division of Paillard Products, formerly general manager of American Equipment Company, Inc., and, prior to that, in the photographic business in Czechoslovakia; and Jerry Kovanda, presently regional manager of Paillard Products, and, from 1937 to the end of 1950, owner and operator of a camera store and export agency in Czechoslovakia.

It appears from their testimony that the merchandise involved herein was purchased from Kovo, Limited, of Czechoslovakia, a large Government-owned agency, which exports the production of the metallurgical, fine mechanical, and optical industries. American Equipment Company, Inc., was its exclusive distributor in the United States for the Flexaret III camera, a model developed for sale by that company. According to the witness Wolf, it differed from the Flexaret camera sold in the home market as follows:

In Czechoslovakia, they were Flexaret Model II, which was with knobs. Then I felt if they have a simple rewinding mechanism with a crank, similar to Rolaflex, but much simpler, real simple—for example, instead of using 50 parts to use only 7 parts, which would simplify the production, put down the cost, and then we will be able to buy a real quantity, which I was positive I could sell on the American market, so that we can have a camera which will be very suitable and very salable on the American market as such. This was the Flexaret III.

\*     \*     \*     \*     \*     \*     \*

Q.   \* \* \* Have you ever, or have you on many occasions disassembled both the Flexaret II and Flexaret III cameras?—A.   Yes, and may I add that by

letters and correspondence from us to Kovo, I was suggesting the different changes and improvements.

Jerry Kovanda testified that he had sold Flexaret cameras in Czechoslovakia, but that he had not sold the Flexaret III model. He had seen the Flexaret III in February or March 1950 and subsequently had received two or three of them, but never for resale in quantities. To his knowledge, it was never offered for sale in Czechoslovakia by himself or by his friends or associates in business.

The declared values of this merchandise were based on the invoice prices, which, according to Wolf, based on his knowledge of costs in Czechoslovakia prior to 1948, represented the cost, plus a profit for the manufacturer. He explained that, in 1948, the margin of profit on the manufacture of cameras at the manufacturer's level was from 8 to 12 per centum.

The witness Kovanda testified that it took many months for the official price to be fixed on the samples of the Flexaret III which he received, because everything was controlled through special agencies. He stated as to the wholesale price of "some similar cameras":

I would say about 1,150 krones, Czech krones. I am starting from the top. 2,100 list, a third less for the dealer, and about 15 or 20 percent for the jobber, so between 1,100 and 1,200 would be the price, in krones, the manufacturer would bill to the jobber.

He said that the official rate of exchange in the middle of 1950 was 50 krones for 1 United States dollar, and, therefore, the price in dollars would be $22 or $23. That was his guess. He added that, by the end of 1950, prices and conditions had changed, because it was the deadline at which all private business was supposed to be confiscated and that wholesalers had been nationalized already. At that time, cameras were subject to a consumption tax up to 700 per centum, which was collected on the manufacturer's level, was passed down to the consumer, and was paid by all, except those who had special certificates, such as officers of the Communist Party and some schools. There were also different discounts, that is, retailer's discounts and jobber's discounts, which did not depend upon the quantity purchased.

In addition to the Flexaret III cameras, parts were also imported either for assembly into complete cameras or for repairs. Mr. Wolf stated that the entry prices thereof were based proportionately on the price of the camera. He said that the price of the Microma camera, also involved herein, was too high; that "the Japanese competitors were much lower."

According to the witness Perkins, the American Equipment Company, Inc., had to cease operations because a shipment in October 1951 was stopped at Hamburg, due to a Presidential Executive order

that no consular invoices should be issued for goods from Czechoslovakia. Since this merchandise had already been sold, the stoppage put the company in a position where it could not operate.

The Government offered in evidence a letter, dated April 20, 1950, from Kovo to the American Embassy in Prague, and a Foreign Service despatch from the said Embassy, dated January 15, 1953, together with attached statements (defendant's collective exhibit A). In the letter, dated April 20, 1950, it is stated that the cameras being exported to the United States were not identical with those being sold on the local market; that the construction was quite different; and that the prices were lower, because they were being produced in large quantities. Attached to the letter is a statement of the cost of production of the Flexaret III camera, including the leather carrying case.

Attached to the Foreign Service despatch of January 15, 1953, are two schedules of production costs of the export and domestic models of the Flexaret III cameras, without the leather carrying case, one being the Kovo schedule and the other being the Meopta schedule. According to the despatch, the cameras are manufactured by Meopta and shipped by Kovo.

A comparison of these schedules shows the following:

| Items | Export model Kovo | | Export model Meopta | Domestic model Kovo and Meopta |
|---|---|---|---|---|
| Materials | Kcs. | 460. 90 | Kcs. 434. 00 | Kcs. 508. 00 |
| Wages | | 142. 75 | 148. 00 | 675. 30 |
| Overhead | | 194. 20 | 174. 20 | 796. 85 |
| General expenses | | 142. 40 | 120. 20 | 553. 75 |
| Packing | | 4. 45 | 4. 45 | 3. 00 |
| Added for profit | | 36. 40 | 71. 80 | 208. 00 |
| Transportation and insurance | | 0. 00 | 29. 10 | 29. 10 |
| Total | | 1, 012. 50 [sic] (not including 15% advertising expenses, nor 5% guarantee fund) | 981. 75 | 2, 774. 00 (includes advertising and guarantee fund) |

The Foreign Embassy despatch, signed by Christopher A. Squire, American vice consul, states:

The Embassy has sought further information from Kovo which it is hoped might shed light on certain items in the cost figures which are questionable, notably difference in wages and general expenses recorded in the schedule for the home and export models of the camera.

In view of the lack of cooperation on part of local export monopolies in research of this type since the Embassy started to delay certification of consular invoices, it is not expected that much additional information will be forthcoming.

The basis upon which imported merchandise is to be appraised is set forth in section 402 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, as follows:

SEC. 402. VALUE.

(a) BASIS.—For the purposes of this Act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

(2) If the appraiser determines that neither the foreign value nor the export value can be satisfactorily ascertained, then the United States value;

(3) If the appraiser determines that neither the foreign value, the export value, nor the United States value can be satisfactorily ascertained, then the cost of production;

*       *       *       *       *       *       *

In the instant case, the appraiser did not indicate the basis for his appraisement, but there is no requirement that this be done, it being presumed that he obeyed the mandate of the statute. *Gump Co. (Inc.)* v. *United States*, 15 Ct. Cust. Appls. 114, T. D. 42189; *E. H. Corrigan* v. *United States*, 40 C. C. P. A. (Customs) 171, C. A. D. 514. The burden is upon the importer to prove that the appraiser's action was erroneous and to establish some other dutiable value as the proper one. It is not incumbent upon the Government to prove that the appraised value is correct, until or unless the importer shows it to be erroneous and establishes a different value. The importer is required to meet every material issue of the case and establish every element of the claimed value in strict compliance with section 402 of the tariff act, as amended. Otherwise, the value found by the appraiser remains in full force and effect. *Kobe Import Co.* v. *United States*, 42 C. C. P. A. (Customs) 194, C. A. D. 593, and cases cited.

"No values may be found except in the manner and by the means defined by the tariff act." *United States* v. *Alfred Dunhill of London, Inc.*, 32 C. C. P. A. (Customs) 187, 189, C. A. D. 305.

Plaintiff claims that there is no foreign, export, or United States value for this merchandise; that value should be found on the basis of cost of production; and that said cost was no greater than the invoice prices. Defendant contends that the importer has failed to establish that the appraised values are erroneous or to prove any different values for the merchandise.

Before the cost of production may be resorted to as a basis upon which to predicate dutiable value, the evidence must establish that there is no foreign, export, or United States value for such or similar merchandise. *Frank P. Dow Co., Inc.* v. *United States*, 32 Cust. Ct. 547, Reap. Dec. 8276. In the instant case, it is clear that, as to the Flexaret III camera, there is no export value, as that value is defined in section 402 (d) of the tariff act, since the plaintiff was the exclu-

sive agent for the foreign seller or manufacturer. It also appears that there was no foreign value, since the Flexaret III camera was not sold for home consumption, and the model sold in Czechoslovakia was of different construction and contained more parts.

There is no evidence in the record which would establish a United States value for this merchandise, but the existence of such a value has not been negatived. Apparently, the Flexaret III model was developed in 1949 or 1950 when the witness Wolf was with the American Equipment Company, Inc. The present importations cover a period from November 1950 to September 1951. Some, at least, of this type of merchandise was sold prior to importation for future delivery. Under the principle laid down in *E. H. Corrigan* v. *United States, supra,* offers and sales for future delivery must be taken into consideration in determining United States value, in cases where such procedure is in the ordinary course of trade, and merchandise in a later importation is entitled to be considered for United States value in the light of offers and sales made of merchandise included in an earlier importation. Therefore, it may very well be that there was a United States value for the instant merchandise. Plaintiff was required to establish the nonexistence of such value before proceeding to prove cost of production.

Assuming, however, that there was no United States value for this merchandise, the record is insufficient to establish the cost of production thereof, in accordance with section 402 (f) of the tariff act. Plaintiff apparently relies upon the testimony of the witness Wolf that the invoice prices represent the cost of production, plus a manufacturer's profit of 8 to 12 per centum. This evidence is clearly insufficient since it is not itemized, as is required by section 402 (f). Furthermore, Wolf's knowledge was based upon his experience in Czechoslovakia prior to 1948, whereas the instant importations occurred in 1950 and 1951, by which time entirely different conditions existed.

There are also in evidence certain documents from the American Embassy in Prague, which may properly be used to aid plaintiff in establishing a *prima facie* case. *Gerhard & Hey Co., Inc.* v. *United States,* 30 Cust. Ct. 580, A. R. D. 13, and cases cited. However, the statement as to costs, attached to the letter of April 20, 1950, is not relevant to the instant importations, which began in November 1950, in view of the testimony that prices were not stable and that, by the end of 1950, everything was in the process of confiscation and nationalization. The statements attached to the Foreign Service despatch of January 15, 1953, are undated, and, as is indicated by the comparison set forth above, there are two different sets of figures for the

cost of production of the export model. Furthermore, the items for wages, overhead, and general expenses in the schedule for the domestic model are at great variance with those in the schedules covering the export model. The additions for profit are less than 8 per centum of the sum of the amounts for materials, fabrication, and usual general expenses. These statements are unsigned, and there is nothing to show that they were made by persons having access to the books of the manufacturer or personal knowledge of the facts. *Cf. United States* v. *Philipp Wirth*, 24 C. C. P. A. (Customs) 188, T. D. 48654; *Gerhard & Hey Co., Inc.* v. *United States, supra; United States* v. *Malhame & Co.*, 39 C. C. P. A. (Customs) 108, C. A. D. 472. I conclude that the statements are insufficient to establish the cost of production of the Flexaret III camera.

There is no evidence in the record as to the value of the Microma camera, except the statement of the witness Wolf that the entered value was to high "because the Japanese competitors were much lower."

Since the plaintiff has failed to make out a *prima facie* case, overcoming the presumption of correctness attached to the appraiser's valuation and establishing some other dutiable value in accordance with the statute, the appraised values must be affirmed.

On the record herein, I find as facts:

1. That the merchandise involved herein consists of Flexaret III reflex cameras, without leather carrying satchels, and parts, and Microma cameras, with cases, and parts, exported from Czechoslovakia between November 1950 and September 1951.

2. That the merchandise was invoiced, entered, and appraised as set forth in Schedule A, attached hereto and made a part hereof.

3. That the importer was the exclusive distributor in the United States for the Flexaret III camera.

4. That there is nothing in the official papers to indicate the basis of appraisement, whether foreign value, export value, United States value, or cost of production.

5. That the evidence is insufficient to establish a foreign value, export value, United States value, or cost of production of the merchandise, in accordance with section 402 of the Tariff Act of 1930, as amended.

I conclude as a matter of law:

1. That the evidence fails to overcome the presumption of correctness attaching to the values for the merchandise found by the appraiser or to establish any other values for the merchandise.

2. That the appraised values must be affirmed.

SCHEDULE A

| Entry No. | Merchandise | Invoiced (U. S. dollars) | Entered (U. S. dollars) | Appraised (U. S. dollars) |
|---|---|---|---|---|
| A–24 | Reflex cameras Flexaret III without satchels_ | 20.25 | 20.32 | 30.47 |
| A–321 | Reflex cameras Flexaret III without satchels_ | 20.25 | 20.32 | 30.47 |
| A–418 | Microma cameras with cases_ _ _ _ _ _ _ _ _ _ _ _ | 13.00 | 13.039* | 19.50 |
| | Cartridges for Microma | 0.34 | 0.341* | 0.45 |
| A–457 | Cameras Microma with cases_ _ _ _ _ _ _ _ _ _ _ _ | 13.00 | 13.039* | 19.50 |
| | Cartridges for Microma | 0.34 | 0.34 | 0.45 |
| A–18 | Flexaret III cameras without satchels_ _ _ _ | 21.46 | 21.46* | 30.47 |
| | Normal Flexaret III cameras in parts: | | | |
| | Hood assembly_ _ _ | 2.10 | 2.10* | 2.80 |
| | Main casing_ _ _ _ _ _ | 8.85 | 8.85* | 11.80 |
| | Focusing housing_ _ | 0.79 | 0.79* | 1.05 |
| | Mirar, taking lens f 3.5_ _ _ _ _ _ _ _ _ _ _ | 3.55 | 3.55* | 4.73 |
| | Mirar, viewing lens f 3.5_ _ _ _ _ _ _ _ _ _ _ | 2.15 | 2.15* | 2.87 |
| A–104 | Flexaret III cameras without leather cases_ | 21.46 | 21.524 | 30.47 |
| A–105 | Microma cameras with leather cases_ _ _ _ _ _ _ _ | 13.00 | 13.039 | 19.50 (case 2.50) (camera 17.00) |
| A–195 | Filters: G1, G2, G3, GR 1, R 1_ _ _ _ _ _ _ _ _ | 0.86 | 0.86* | 1.05 |
| | Close up lenses: 1:0, 5m; 0, 5:0, 33m_ _ _ _ _ | 2.20 (per pair) | 2.20* (per pair) | 2.93 (per pair) |
| | Sunshades_ _ _ _ _ _ _ _ _ _ _ _ | 0.30 | 0.30* | 0.40 |
| A–196 | Filters G–2 for Mikroma cameras_ _ _ _ _ _ _ _ _ _ | 0.80 | 0.80* | 1.07 |
| | Developing tanks for Mikroma cameras_ _ _ | 1.40 | 1.40* | 1.87 |
| | Flexaret III cameras without leather cases_ | 21.46 | 21.524 | 30.47 |
| A–267 | Flexaret III cameras without leather cases_ | 21.46 | 21.264 | 30.47 |

*Less nondutiable charges.