(Reap. Dec. 9334)

HUMPHREY & MACGREGOR, INC. *v.* UNITED STATES

Entry No. 306.

(Decided March 3, 1959)

*Sharretts, Paley & Carter* (*Joseph F. Donohue* and *Howard C. Carter* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Richard H. Welsh*, trial attorneys), for the defendant.

LAWRENCE, Judge: Plaintiff imported from England so-called prestressed steel bars together with "Sets of Ends," consisting of nuts and washers to be used in connection with the bars.

There were 140 bars, 47 feet 8½ inches long, and 275 bars, 47 feet 4¾ inches long, all 1 inch in diameter, which were invoiced and entered at $0.226 and appraised at 24.4d per foot. The 830 sets of ends (nuts and washers) were invoiced and entered at $1.625 each and appraised at 12/0d per set, all items net packed. The merchandise was appraised upon the statutory basis of foreign value. Plaintiff contends, primarily, that foreign, export, and United States values were nonexistent for this commodity and that the proper basis for appraisement is statutory cost of production, as defined in section 402(f) of the Tariff Act of 1930 (19 U.S.C. § 1402(f)).

Plaintiff's witness, Curzon Dobell, testified in substance that he had been president for 3 years and associated with the Preload Co., Inc., of New York City, for 18 years, engaged in the business of designing and building structures with the use of prestressed concrete. He had negotiated the purchase of the subject merchandise in England where he learned that a British company, known as McCalls Macalloy, Ltd., had developed a patented process of making the product in controversy and eventually entered into a contract for the purchase of this importation. Dobell was unable to produce a specific contract, for the reason that it required a series of written or oral negotiations through which it was agreed that the Preload Co. would endeavor to create a market in this country, provided that the British producers would not sell to anyone else in the United States and also that Preload could have the right to take over the patent, which it did.

The witness further testified that the imported commodity was used by his company in the United States in building tanks or bridges, but that it was not sold in the open market.

Plaintiff also introduced an affidavit of Cyril William Hamilton of England, exhibit 1, from which it appears that Hamilton was the

managing director of McCalls Macalloy, Ltd., and had personal knowledge of the sales made to the Preload Co. as well as to the Stressteel Corp., the latter being a subsidiary of the Preload Co. He explained how, in actual use, the bars were placed in concrete beams and anchored at either end with plates, washers, and nuts, and, by means of a hydraulic jack, were subjected to tension; that while the bars were made by his company, the nuts, couplers, and washers were made to specifications by other manufacturers and purchased by his company. The nuts and couplers were made with a special thread for use with the thread on the bars; and the washers were made to the size of the bars.

Hamilton further testified that the bars and the accompanying equipment had been manufactured since 1950. Between September 1950 and December 1953, said merchandise was not freely offered for sale for use in England at an established price; that the only pricelists that were ever issued contained this statement:

> The prices scheduled above are intended as a guide to current prices and are not to be taken as an offer to supply. A firm quotation and delivery will be given for any definite enquiry.

At no time, however, during the period from 1950 to 1953 was such merchandise freely offered for sale at an established price to any purchaser for use in England. Neither had said merchandise been freely offered for sale for exportation to the United States but had been sold only to the Preload Co., at prices and conditions fixed by negotiated contract.

A schedule attached to the affidavit sets forth cost of production of the various sizes and lengths of the bars during the period from January 1, 1951, through November 15, 1953, which covers the date of importation of the instant merchandise.

A second affidavit of Cyril William Hamilton, marked collective exhibit 2, was offered in evidence to further augment the qualifications of proponent Hamilton to establish cost of production of the imported commodity.

As noted above, the appraiser treated the steel bars and the sets of nuts and washers as separate items for valuation purposes. This is consistent with the holding of the second division of this court in classification proceedings, *Preload Construction Corp.* and *Carson M. Simon & Co.* v. *United States*, 38 Cust. Ct. 60, C.D. 1844, wherein it was held that prestressed steel bars, imported with sets of nuts and washers, constituted separate tariff entities. Plaintiff, in its brief herein, concedes that, in such event, the appraisement of the sets of nuts and washers on the basis of foreign value, at the unit value found by the appraiser, should be affirmed.

No witnesses were produced on behalf of defendant. There was offered and received in evidence as defendant's collective exhibit

A, report No. 8–337 of the Treasury attaché in London, England, supplemented by exhibits A through K, L–1, L–2, M, N, and X. It was brought to the attention of the court that supplementary exhibits L, O, P, and P–1 were missing from said collective exhibit A. There appears to be nothing in the documentary evidence offered by defendant which seriously contradicts the testimony and affidavits offered on behalf of plaintiff herein.

Based upon the testimony and documentary evidence, I find as facts:

1. That prestressed steel bars such as those in issue were not freely offered for sale to all purchasers for home consumption in England, the country of exportation, by reason of the fact that the price at which such merchandise was sold was always the result of bargaining negotiations. *United States* v. *M. V. Jenkins et al.*, 39 C.C.P.A. (Customs) 158, C.A.D. 479.

2. That export value did not exist by virtue of the fact that there was a restricted sale of the merchandise for export to the Preload Co., the ultimate consignee herein.

3. Inasmuch as such merchandise was not sold in the United States but was used entirely by the Preload Co. for its own construction operations, there was no statutory United States value.

4. Since the bars were manufactured pursuant to a patent, it negates the existence of "similar" merchandise for which foreign, export, or United States value could exist.

5. That the cost of materials and fabrication employed in manufacturing or producing such merchandise, at a time preceding the date of exportation of the instant merchandise, plus the usual general expenses and the cost of packing and containers to place the merchandise in condition, packed ready for shipment to the United States, with an addition for profit, were as follows:

| | Pence per foot | |
| --- | --- | --- |
| | 47-foot 4¾-inch bars | 47-foot 8½-inch bars |
| Cost of materials and fabrication | 14. 068 | 14. 064 |
| Usual general expenses | 4. 529 (32.19% of foregoing) | 4. 513 (32.09% of foregoing) |
| Cost of packing and containers | . 215 | . 215 |
| Profit | 1. 794 (9.65% of cost of materials and general expenses) | 1. 789 (9.63% of cost of materials and general expenses) |
| Total | 20. 606 | 20. 581 |

6. That the sets of nuts and washers which accompanied the prestressed steel bars should be appraised on the basis of foreign value.

As matters of law, I conclude:

1. That there was no foreign, export, or United States value for the prestressed steel bars covered by the above-enumerated appeal for a reappraisement.

2. That cost of production, as that value is defined in section 402(f) of the Tariff Act of 1930, is the proper basis for determining the dutiable value of said bars.

3. That said value is 20.606 pence per foot for the 47-foot 4¾-inch bars and 20.581 pence per foot for the 47-foot 8½-inch bars.

4. As to the nuts and washers, which accompanied the prestressed steel bars in issue, the value of such nuts and washers is as found by the appraiser.

Judgment will issue accordingly.