(A.R.D. 122)

UNITED STATES *v.* HUMPHREY & MACGREGOR, INC.

Entry No. 306.

Third Division, Appellate Term

(Decided May 3, 1960)

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellant.

*Sharretts, Paley & Carter* (*Joseph F. Donohue* of counsel) for the appellee.

Before JOHNSON, DONLON, and RICHARDSON, Judges

JOHNSON, Judge: This is an application for review of a decision and judgment of the trial court, holding that there was no foreign, export, or United States value for merchandise described as steel concrete reinforcing bars or stressed or prestressed steel bars and finding value on the basis of cost of production. *Humphrey & MacGregor, Inc.* v. *United States*, 42 Cust. Ct. 545, Reap. Dec. 9334. That decision also involved nuts and washers imported to be used with the steel bars, but no appeal has been filed in respect to them.

The merchandise before us was imported for the account of the Stressteel Corp., a subsidiary or associate of the Preload Co., Inc., from England on October 11, 1953. It consists of 140 bars, 47 feet 8½ inches long and 1 inch in diameter, and 275 bars, 47 feet 4¾ inches long and 1 inch in diameter. They were invoiced and entered at $0.226 per foot and were appraised on the basis of foreign value at 24.4 pence per foot. The trial court found dutiable value on the basis of cost of production at 20.606 pence per foot for the 47-foot 4¾-inch bars and at 20.581 pence per foot for the 47-foot 8½-inch bars.

This case was originally submitted for decision before the trial court upon the testimony of Curzon Dobell, president of the Preload Co., Inc., an affidavit of Cyril William Hamilton, managing director of McCalls Macalloy, Ltd., the British manufacturer (plaintiff's exhibit 1), and a report of Charles R. Howard, Treasury attaché, with attached exhibits (defendant's collective exhibit A). Subsequent to the submission of the case and the filing of briefs, the importer moved to set aside the submission and restore the case to the docket. Said motion was granted, and, when the case again came on for hearing,

there was received in evidence, over the Government's objection, a second affidavit of Cyril William Hamilton (plaintiff's collective exhibit 2).

On this appeal, the Government has assigned as error the granting of said motion and the reception of said evidence.

It is clearly within the inherent power of this court to reopen a case for the purpose of permitting the introduction of additional evidence. The exercise of such power is within the discretion of the court and is not subject to review, unless there has been an abuse of discretion. *United States* v. *International Graphite & Electrode Corp.*, 25 C.C.P.A. (Customs) 74, T.D. 49066. The action of the trial judge in reopening the proceedings in the instant case and in receiving into evidence an affidavit supplementing the statements in a prior affidavit did not constitute an abuse of discretion. *S. H. Kress & Co. et al.* v. *United States*, 42 Cust. Ct. 698, A.R.D. 99; *United States* v. *A. N. Deringer, Inc.*, 42 Cust. Ct. 711, A.R.D. 102, appeal dismissed June 24, 1959. The case of *United States* v. *International Forwarding Co., Inc.*, 27 C.C.P.A. (Customs) 21, C.A.D. 56, relied upon by the Government, is not in point, since it involved a denial of a request addressed to the court of appeals that it remand the case for a new trial, whereas the instant case involves the reopening of the case by the trial court.

On the merits, the importer claims that there was no established price at which such merchandise was freely offered for sale in England, the country of exportation, at the time of exportation; that no similar merchandise was manufactured in England at that time; that there was no export or United States value for such or similar merchandise; and that the cost of production was the proper basis of valuation.

The Government contends that there is a foreign value for such merchandise, which is the appraised value, and that even if the cost of production is the proper basis for appraisement, the evidence is insufficient to establish such value in accordance with the statute.

The record establishes that, at the time of exportation, such merchandise was offered for sale for export to the United States only to the Preload Co., Inc., or its subsidiaries or associates. Therefore, there is no export value for such merchandise, as that value is defined in section 402 (d) of the Tariff Act of 1930.

The chief controversy is whether or not there is a foreign value for such merchandise, as that value is defined in section 402(c) of said tariff act, as amended by the Customs Administrative Act of 1938.

The burden rests upon the appealing party to meet every material issue in the case, to prove the action of the appraiser erroneous, and to establish the correct dutiable value. *United States* v. *Malhame*

& *Co.*, 19 C.C.P.A. (Customs) 164, T.D. 45276; *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495; *H. S. Dorf & Co., Inc., a/c Joseph H. Meyer Bros.* v. *United States*, 41 C.C.P.A. (Customs) 183, C.A.D. 548; *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593. Since, in this case, the importer claims that cost of production is the proper basis of value, it is incumbent upon it to establish first that there is no foreign, export, or United States value for such or similar merchandise. *United States* v. *A. N. Deringer, Inc., supra*; *Frank P. Dow Co., Inc.* v. *United States*, 32 Cust. Ct. 547, Reap. Dec. 8276; *Joseph G. Maddox, as Trustee of and Former Director of American Equipment Company, Inc., Dissolved* .v. *United States*, 35 Cust. Ct. 412, Reap. Dec. 8484.

The importer contends that no foreign value exists for this merchandise on the ground that, at the time of exportation, it was not freely offered for sale to all purchasers in the home market at a single uniform price. *United States* v. *M. V. Jenkins et al.*, 39 C.C.P.A. (Customs) 158, C.A.D. 479. In support of its position, it produced an affidavit of Cyril William Hamilton (plaintiff's exhibit 1), stating that stressed steel bars and their accompanying equipment have been manufactured by his company since 1950 and that—

* * * Between September 1950 and December 1953 they were not freely offered for sale for use in England at an established price. The only price lists that were ever issued all contained the following statement:

> The prices scheduled above are intended as a guide to current prices and are not to be taken as an offer to supply. A firm quotation and delivery will be given for any definite enquiry.

In practice, therefore, my company quoted only against contracts. Each one was negotiated separately with respect to prices, details of delivery and other specified conditions and restrictions of sale. At no time within the period of between 1950 and December 1953 was such merchandise freely offered for sale at an established price to any purchasers for use in England.

The Government produced a report of Treasury Attaché Charles R. Howard, dated January 5, 1954, to which are attached many exhibits. A pricelist of February 27, 1952 (subexhibit G), states that the prices are intended as a guide to current prices and are not to be taken as an offer to supply, but the "General Conditions," attached thereto, provide:

1. "MACALLOY" STEEL BARS.

    (a) Will be available in the diameters and lengths shown in TABLE 1. * * *

    \*     \*     \*     \*     \*     \*     \*

    (c) The bar prices are given in Table 1 attached.

The price per foot for bars 1 inch in diameter and 45′ 1″–50′ long is listed at 24.4 pence (the price at which the instant merchandise was appraised).

In a letter from McCalls Macalloy, Ltd., to the Preload Co., Inc., dated November 17, 1952 (subexhibit K, attached to defendant's collective exhibit A), it is stated:

1. The selling price to purchasers for home consumption in England on the 2nd August, 1952, was as follows:—

> 1" dia. bars, 5 ft. to 40 ft.   24.0 pence per foot ($.280)
> 45'1" to 50 ft.   24.4 pence per foot ($.285)

Another letter from the same company, dated December 7, 1953, states:

* * * No royalties or other fees are payable by users of "Macalloy" materials supplied from U.K.-production and the list prices are inclusive. Where we undertake design, however, we are entitled to claim additional fees, but these services are quite distinct from the steel supply.

A memorandum of McCalls Macalloy, Ltd., dated November 25, 1952, prepared in answer to a request for information from the Treasury Department, states:

8(g)   If designs are called for or consultations made these are charged but if consumers provide their own design and specification merchandise is freely offered both at home and abroad at the published price lists.

The report of the Treasury attaché contains the following statements:

1. * * *

 *  *  *  *  *  *  *

I viewed numerous invoices of sales made for home consumption and no mention was made of a royalty.

If the firm is requested to provide designs, etc., then a fee is charged for such services. Mr. Betts stated his firm gets all it can for such services and that the amount charged depends on the size of the job.

 *  *  *  *  *  *  *

6(a)   Foreign value did exist for such merchandise during the period shipments were made for the Tampa Bay bridge; * * *. Identical merchandise is freely offered for sale for home consumption in the United Kingdom. * * *

There are transmitted herewith as Exhibit F two copies of the firm's home market price list dated August 13, 1951. * * *

 *  *  *  *  *  *  *

Prices for home consumption were increased February 27, 1952. There are transmitted herewith as Exhibit G two copies of home market price list which was effective February 27, 1952. * * *

 *  *  *  *  *  *  *

9. Identical merchandise is freely offered for sale for home consumption and for general exportation without the payment of royalty, design fees or engineering fees. * * *

10. If a customer requests the manufacturer to provide material, designs and drawings, the quotation made for the job includes a charge for design fees, working drawings and the usual consultations necessary with the firm's engineer. * * * The charges apply to home market as well as export jobs. There is no uniform charge for these services. The manufacturer gets as much as possible depending upon the size of the job. * * *

On this record, the trial court found that there was nothing in the documentary evidence offered by the Government to contradict seriously the testimony and affidavits produced by the importer. In our view, however, the report of the Treasury attaché and the exhibits attached thereto are in substantial conflict with the affidavits. While Mr. Hamilton states that there was no established price for the merchandise and that contracts were negotiated as to price, details of delivery, and other conditions, the Treasury report and attachments indicate that charges for designs and engineering, if furnished by the manufacturer, were negotiated, but that the merchandise *per se* was freely offered at the list prices. Neither party has produced any contracts, invoices, or resumés of the details of specific sales, from which the court could determine what terms or conditions were actually negotiated and whether the bars *per se* were freely offered to all purchasers at a uniform price. Because of the type of merchandise involved, it is probable that the transactions included more than the purchase of prestressed steel bars, but the record does not establish that the price of such bars alone was not uniform. Rather, it indicates the contrary. In view of the conflicting statements in the report of the Treasury attaché and in the affidavit of Mr. Hamilton, and in view of the fact that no additional evidence was offered in rebuttal to resolve the conflict or set out the details of the transactions in the home market, we find that the importer has not sustained its burden of proving the nonexistence of a foreign value for such merchandise. *Chas. E. Washburn Company* v. *United States*, 32 Cust. Ct. 596, Reap. Dec. 8294, affirmed in 34 Cust. Ct. 536, A.R.D. 55; *I. Arditi* v. *United States*, 37 Cust. Ct. 466, Reap. Dec. 8610, affirmed in 38 Cust. Ct. 749, A.R.D. 75; *Golding Bros., Inc.* v. *United States*, 68 Treas. Dec. 1310, Reap. Dec. 3680, affirmed *sub nom Golding Bros. Co., Inc.* v. *United States*, 24 C.C.P.A. (Customs) 15, T.D. 48289.

It is, therefore, unnecessary for us to consider whether or not similar merchandise was freely offered for sale for home consumption or for exportation to the United States, whether or not there was a United States value, and whether or not the evidence is sufficient to establish the cost of production, as defined by the statute.

On the record presented, we find as facts:

1. That the merchandise consists of so-called steel concrete reinforcing bars or stressed or prestressed steel bars, 47 feet 8½ inches long and 1 inch in diameter and 47 feet 4¾ inches long and 1 inch in diameter, imported from England on October 11, 1953, for the account of the Stressteel Corp., a subsidiary or associate of the Preload Co., Inc.

2. That they were invoiced and entered at $0.226 per foot and were appraised at 24.4 pence per foot.

3. That such merchandise was offered for sale for export to the United States only to the Preload Co., Inc., or its subsidiaries or associates.

4. That pricelists for home consumption were issued, from time to time, by the manufacturer, which pricelists stated that they were guides to current prices and not offers to supply. That where the manufacturer furnished designs or consultations were made with the firm's engineers, additional charges which were not uniform but were subject to negotiation were made. That the evidence is insufficient to establish that the merchandise *per se* was not offered for sale in the home market at a uniform price.

We conclude as matters of law:

1. That there is no export value, as that value is defined in section 402(d) of the Tariff Act of 1930, for such merchandise.

2. That the importer has not sustained its burden of proving the nonexistence of a foreign value.

3. That the proper basis for the determination of the value of the merchandise is foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended.

4. That such value is the appraised value.

The judgment of the trial court is, therefore, reversed. Judgment will be rendered accordingly.