(R.D. 11693)

Castle & Cooke, Inc.
A. J. Fritz & Co. of Hawaii, Inc. } *v.* United States

Entry No. 103767.

(Decided January 27, 1970)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.

*William D. Ruckelshaus,* Assistant Attorney General (*Bernard J. Babb,* trial attorney), for the defendant.

Rao, Chief Judge: The merchandise involved in this appeal for reappraisement consists of two Broadbent automatic sugar centrifugal units and fitments, exported from England to Hawaii on or about September 15, 1967. It was entered at the port of Honolulu at the invoice price of £15,803 ($44,071) and was appraised at £16,870 plus carriage, cases and labor, as shown on the special customs invoice.

The merchandise is on the final list promulgated by the Secretary of the Treasury (93 Treas. Dec. 14, T.D. 54521) and was appraised on the basis of export value, as that value is defined in section 402a(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956. It is presumed, therefore, that the merchandise was freely offered for sale to all purchasers for exportation to the United States in the usual wholesale quantities and in the ordinary course of trade at the appraised value. *United States* v. *Fischer Scientific Co.,* 44 CCPA 122, C.A.D. 648 (1957). Plaintiffs do not challenge the basis of appraisement but claim that the appraised value includes a 10 percent commission or discount which is not dutiable.

It appears from a "Notice of Action" sent to the importer by Import Specialist Yoichi Tamura (exhibit 1), that a 10 percent "commission" was included as dutiable in the appraisement. Since this is the only item challenged, the plaintiffs may rely upon the presumption of correctness attaching to the other elements of value and need establish only that the 10 percent "commission" is not properly a part of dutiable value. *United States* v. *Knit Wits* (*Wiley*) *et al.,* 62 Cust. Ct. 1008, A.R.D. 251, 296 F. Supp. 949 (1969), and cases cited.

To meet their burden of proof, plaintiffs introduced an affidavit of Arthur J. Hallitt, director of Thomas Broadbent & Sons Limited, manufacturer of the merchandise (exhibit 2). According to the affidavit, Mr. Hallitt has been with the company for 20 years, during most of which time he has been in charge of the Sugar Sales Division. In that capacity his principal responsibility is the sale of sugar

centrifugal equipment produced by his firm to all parts of the world. He stated that he has personal knowledge of the selling practice of the company and prices of said equipment for sale for home consumption, for exportation to the United States, and to third countries, because he supervises the quotations submitted to potential customers. The affidavit states further:

> That the Automatic Sugar Centrifugal equipment such as my firm sold to Castle and Cooke in 1967 has been offered at all times to anyone who cared to buy either for use in the United Kingdom or for exportation to the United States or to third countries. * * *

> That the ex works sale price of any particular type of sugar centrifugal to any customer in the World is the same at any particular period and this ex works sales price would not vary because of the number of sugar centrifugals purchased. Included in our ex works sale prices is a 10 percent commission that my company pays to our agents in those areas where my company has an agent. However, in those areas where the company has no agent, this 10% is offered to our customers as a discount from the ex works sale price as there would be no point of having our customers pay for the service of an agent that is not being provided to the customers.

> That my company has no agent or agents in the United Kingdom for the sale of sugar centrifugals as all home sales are dealt with direct by the Head Office here in Huddersfield. For this reason a 10% discount off of the ex works sale prices are [sic] always allowed for sales for home consumption.

> That similarly my company has no agents for the sale of sugar centrifugals in the United States. Therefore when offering sugar centrifugal equipment for exportation to the United States, we offer our customers, as we offered Castle & Cooke on their said purchase in 1967, the same 10% discount. However, unlike sales for home consumption, my company then adds the inland charges to port of shipment on sales for exportation to the United States as all such sales for exportation are on an F.O.B. basis.

Testimony concerning the instant importation was given by Clifton Albert Dalen, manager of purchasing of Castle & Cooke, Inc. He stated that when his firm, whose business included factoring for sugar plantations, received a request from the manager of Kohala Sugar Co. for the purchase of the two Broadbent machines involved herein, it contacted Broadbent, obtained a proposal, and later issued an order, together with shipping instructions. A copy of the proposal was received in evidence as exhibit 3. It contains the following:

> Our quotation is submitted inclusive of the 10% discount we are allowing in Hawaii to avoid misunderstanding of the actual price. As we have no agency commitments in Hawaii at present,

we are able to pass the advantage on to the customer. Our price is calculated as follows:–

|  | Ex Works. | Packing for shipment & delivery FOB Southhampton. | Total FOB Price. |
|---|---|---|---|
| Two machine battery with framing for three machines | £15,461. | | |
| less 10% | 1,546. | | |
| | £13,915. | £506. | £14,421. |
| Wash water superheating equipment | £1,152. | | |
| less 10% | 115. | | |
| | £1,037. | £104. | £1,141. |
| * * * | * | * * | * |
| Sequence control unit | £257. | | |
| less 10% | 26. | | |
| | £231. | £10. | £241. |

Handwritten notations made by the witness list amounts for insurance and freight to Hilo (Hawaii) totaling £1,329.

The purchase order, dated March 28, 1967, placed in accordance with the quotation, describes the merchandise as centrifugals for raw sugar 48″ diameter x 30″ deep x 450/900/1200 RPM synchronous fully automatic. The prices for the machines, the wash water superheating equipment and the control unit are those given in the quotation. Mr. Dalen testified that the order covered two units, with a base sufficient to hold and operate a third unit.

Defendant called Alexander Davidson Valentine, chief buyer of C. Brewer & Co., Ltd., sugar factors and agents for eight plantations. He testified that after receiving requisitions from certain plantations in 1967, his firm had purchased sugar centrifugals from Thomas Broadbent & Sons Ltd. According to copies of documents from the files of C. Brewer & Co., kept in the regular course of business, the purchases included two 48″ x 30″ Broadbent fully automatic sugar centrifugal units, and four 42″ x 30″ machines (exhibits A and B). The witness was not familiar with the centrifugals bought by Castle

& Cooke for Kohala Sugar Company and did not know whether all 48″ x 30″ centrifugals were equipped in the same way. The quotations from Broadbent to Brewer for the machines give prices c.i.f. Hilo and contain no breakdown showing prices ex works and the amounts for inland freight, ocean freight, and insurance. Some of the quotations for spare parts give prices ex works with an additional amount for c.i.f. Hilo. None mention a discount.

The price for two 48″ x 30″ Broadbent sugar centrifugal units is quoted at £16,362 c.i.f. Hilo, plus £195 for a molasses classification per machine and £1,317 for wash water superheating equipment. Other extras were quoted in a later statement at £376 per machine.

This statement also indicates that in the event of standard monitor casing and syrup curb being acceptable, Auto Brix Dilution equipment would be included and a reduction made of £132 per machine.

The purchase order, dated June 27, 1967, gives a total cost of $133,043 c.i.f. Hilo or Nawiliwili, Hawaii. This figure was arrived at in the following manner according to handwritten notations, dated April 14, 1967, and signed by R. T. Webb, engineer in Brewer's Engineering Department, Joseph Sutphen, and J. B. McCall, engineer for Thomas Broadbent & Sons:

| | | |
|---|---|---|
| [2 – 48″ × 30″ units] | £16362 | $45,813 |
| [4 – 42″ × 30″ units] | 30908 | 86,542 |
| | £47270 | $132,355 |
| Extra £ 376 × 6 | 2256 | 6,316 |
| | £49526 | $138,671 |
| Less £ 132 × 6 | 792 | 2,217 |
| | £48754 | $136,454 |
| Less 2½% | 1218 | 3,411 |
| | £47516 | $133,043 |

The invoice for the 48″ x 30″ Broadbent sugar centrifugals gives the total amount as £17,960/0/6 c.i.f. Hilo, which was paid by a draft dated November 14, 1967. A bill of lading sets out the freight cost as $2,644.92. A handwritten notation gives it as £944/12/5. Two other invoices and covering drafts are in the amounts of £16,122/18/2 and £16,022/15/2 respectively. Thus the total amount paid by Brewer was approximately £50,104, rather than the £47,516 of the notation of April 14, 1967.

The record presented establishes that Castle & Cooke purchased sugar centrifugals and accessories from Broadbent on an f.o.b. Southampton basis and that the total purchase prices were made up of the ex works prices less 10 percent plus an amount for packing and shipment to Southampton. Mr. Hallitt's affidavit states that Broadbent sold to all purchasers in areas where Broadbent did not have an agent, including the United States, in that manner, that is, on an f.o.b. basis with a 10 percent discount on the ex works price.

This affidavit, if uncontradicted, being a statement of the director of the company who was in charge of sales of sugar centrifugals all over the world, and who had personal knowledge of his firm's sales practices, might be sufficient to establish, *prima facie*, that the merchandise was offered to all purchasers for exportation to the United States at a 10 percent discount. *United States* v. *North American Asbestos Corp.*, 48 CCPA 153, C.A.D. 783 (1961); *United States* v. *National Carloading Corp.*, 46 Cust. Ct. 745, A.R.D. 125 (1961).

However, the evidence introduced by defendant casts doubt upon some of the statements in the affidavit.

It appears from the documents comprising exhibits A and B that sugar centrifugals were offered and sold by Broadbent to Brewer on a c.i.f. Hilo, rather than an f.o.b. port of shipment basis. Nowhere in any of the quotations or in the purchase orders is there a mention of a discount. Even where ex works quotations are set out, there is nothing to indicate a discount was offered. In the handwritten calculations dated April 14, 1967 and signed by Messrs. Webb, Sutphen and McCall, there appears to be a 2½ percent deduction. However, the total amount paid by Brewer is higher than the total in the calculations.

The evidence offered by defendant is sufficient to indicate that not all customers purchased on the same basis or received the same discount. It shifts the burden of going forward with evidence in rebuttal to plaintiffs. *United States* v. *Edson, Keith & Co.*, 5 Ct. Cust. Appls. 82, T.D. 34128 (1914); *United States* v. *Humphrey & MacGregor, Inc.*, 44 Cust. Ct. 795, A.R.D. 122 (1960). Plaintiffs might have shown, for instance, that the sale to Brewer was exceptional and not in the ordinary course of trade or that Brewer did in fact receive a 10 percent discount on the ex works price. This plaintiffs have failed to do.

I am of opinion and hold that the record does not establish that the 10 percent discount claimed by plaintiffs was freely offered to all purchasers of the merchandise for exportation to the United States. A discount which is not granted to all purchasers in the usual wholesale quantities and in the ordinary course of trade may not be considered in determining export value. *United States* v. *A. W. Faber, Inc.*, 21 CCPA 290, T.D. 46819 (1933); *United States* v. *Mexican Products*

*Co.*, 28 CCPA 80, C.A.D. 129 (1940) ; *J. J. Gavin & Co., Inc. (Solomon & Phillips)* v. *United States*, 38 CCPA 69, C.A.D. 441 (1950).

I find as facts:

1. That the merchandise involved herein consists of sugar centrifugals with fitments, manufactured by Thomas Broadbent & Sons, Ltd., of England, and exported to Castle & Cooke, Inc. of Hawaii on or about September 15, 1967.

2. That said merchandise is on the final list promulgated by the Secretary of the Treasury, pursuant to the Customs Simplification Act of 1956, 93 Treas. Dec. 14, T.D. 54521.

3. That said merchandise was appraised on the basis of export value, as that value is defined in section 402a(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at £16,870, plus carriage, labor and cases.

4. That plaintiffs claim that the appraised value includes a commission or discount of 10 percent of the ex works price, offered to purchasers in areas, including the United States, where the manufacturer does not have selling agents, and that said commission or discount is nondutiable.

5. That plaintiffs have failed to establish that such or similar merchandise is freely offered or sold to all purchasers for exportation to the United States, in the usual wholesale quantities and in the ordinary course of trade, at ex works prices, less 10 percent, f.o.b. port of shipment.

6. That plaintiffs have failed to prove a value other than the appraised value.

I conclude as matters of law:

1. That export value, as that value is defined in section 402a(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for determining the value of the within merchandise.

2. That said value is the appraised value.

Judgment will be entered accordingly.